NO. 07-09-0193-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 20, 2010
_____

RAFEAL G. QUINONES,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 108th DISTRICT COURT OF POTTER COUNTY;

NO. 57,455-E; HON. DOUGLAS R. WOODBURN, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Rafeal G. Quinones (appellant) appeals his conviction for possessing a controlled substance. His sole issue concerns whether the trial court erred in denying his motion to suppress. We overrule the issue and affirm the judgment.

*Background*

Randy Mincher (Mincher), an Amarillo Police Department officer, was dispatched to a business, My Club, to investigate a possible fight around 2:50 a.m. According to

Mincher, My Club is an "after-hours club," where "people usually go after the bars close to hang out and continue partying." Upon arriving, the officer failed to observe a fight or find anyone admitting to a fight. He nonetheless began looking around for any other type of criminal activity present when he observed appellant holding a styrofoam cup. His experience told him that such cups were often used to carry alcoholic beverages. Furthermore, the consumption of such beverages in a public place at that time of night was prohibited by a City of Amarillo ordinance.

After appellant drank from the cup, Mincher walked over to him, looked inside the cup, and discovered that it contained beer. At that point, appellant was arrested for "consumption after hours." So too was he searched incident to the arrest. The search resulted in the officer's discovery of a clear plastic baggie containing cocaine.

Once indicted, appellant moved to have the contraband suppressed because the purported offense for which the officer initially arrested him required the geographic location at which the search occurred, *i.e.* My Club, to be a public place. In his view, it was not such a locale because patrons were charged an admission fee and subject to search and exclusion by security personnel. The trial court denied the motion, after which appellant pled guilty to the charge for which he was convicted.

*Issue – Motion to Suppress*

Before us appellant alleges that the trial court erred in denying his motion since he had violated no law. Furthermore, he allegedly violated no law since My Club was not a public place and the City of Amarillo lacked the authority to regulate establishments that permitted clientele to bring their own alcoholic beverages onto the premises. We need only address the first contention since the second was not asserted

2

below, and having not been proffered to the trial court for consideration, it was waived. *See Darnes v. State,* 118 S.W.3d 916, 919 (Tex. App.–Amarillo 2003, pet. ref'd) (holding that the grounds for reversal asserted on appeal must comport with those mentioned at trial, otherwise they are waived).

We next note that the standard of review is one of abused discretion. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Thus, we defer to the trial court's findings of historical fact but review, *de novo,* the manner in which it applied the law to those facts. *Valtierra v. State,* 310 S.W.3d at 447. Additionally, because the search at issue was incident to a warrantless arrest, it would behoove us to reiterate when such an arrest can occur.

Authority has long held that police officers may make warrantless arrests when facts and circumstances within the knowledge of the officer, and of which he has reasonably trustworthy information, would authorize a reasonably prudent person to believe that the suspect committed or is committing a crime. *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999); *In re E.P.*, 257 S.W.3d 523, 526-27 (Tex. App. –Dallas 2008, no pet.). Under this test, the State need not prove that the suspect actually committed a crime. Rather, it is enough to illustrate that the circumstances enabled a reasonable officer to *believe* that the suspect was doing so or had done so. *See Adkins v. State,* 764 S.W.2d 782, 785 (Tex. Crim. App. 1988) (holding that art. 14.01 arrests have previously been sanctioned when an individual's conduct, while not overtly criminal by itself, is coupled with an officer's prior knowledge so that the otherwise innocuous conduct reflects that an offense is *then* occurring). In other words, if an officer could reasonably believe that the elements comprising a crime existed,

3

given the totality of circumstances before him, he has probable cause to arrest the actor irrespective of whether the State can prove at trial that a crime actually, *i.e.* factually, occurred. *See Delgado v. State,* 718 S.W.2d 718, 720-21 (Tex. Crim. App. 1986) (finding the warrantless arrest legal even though the fact that the hypodermic syringe in the instant case later was shown by a laboratory report not to contain a controlled substance, contrary to the police officer's impression at the scene).

As previously mentioned, the violation allegedly committed by appellant involved his drinking alcoholic beverages in a public place after hours. According to Mincher, it was illegal to consume such a beverage in a public place between the hours of 2:15 a.m. and 7:00 a.m.[1] And, in determining whether a reasonable officer could deduce that My Club was a public place, we find guidance in legislative edict and judicial pronouncement. Our legislature has defined the term as any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops. TEX. PEN. CODE ANN. §1.07(a)(40) (Vernon Supp. 2010). In turn, sister courts have held that a place is public if the public has "any access" to it. *Loera v. State*, 14 S.W.3d 464, 467 (Tex. App.–Dallas 2000, no pet.); *Woodruff v. State*, 899 S.W.2d 443, 445 (Tex. App.–Austin 1995, pet. ref'd). The focus, we are told, lies "on the extent of actual access and not on the formalities by which access is gained." *State v. Gerstenkorn,* 239 S.W.3d 357, 359 (Tex. App.–San Antonio 2007, no pet.). And, depending upon the extent members of the public have

---

[1]No one contests that the City of Amarillo had an ordinance encompassing that prohibition. And, though the ordinance was not introduced into evidence below, the officer described the offense and its elements. That was enough to illustrate the existence of the municipal restriction. *DeDonato v. State*, 819 S.W.2d 164, 166 (Tex.Crim.App. 1991).

4

access to the locality, a private residence could conceivably be a public place, *Loera v. State*, 14 S.W.3d at 469 (citing a situation where the homeowner conducts an "open house"), as could a gated community monitored by security guards, *State v. Gerstenkorn*, *supra,* or a fenced and guarded air force base wherein entrance is gained only through acquiring a permit. *Woodruff v. State*, *supra*. With this said, we turn to the record and circumstances disclosed therein which illustrate the extent to which members of the public had actual access to My Club.

Again, Officer Mincher testified that 1) he was familiar with the operation of My Club, 2) the club had security personnel at the door monitoring the ingress and egress of its clientele, and 3) those wishing to enter had to pay a fee. When asked whether "to the best of [his] knowledge, anybody can walk up to that club, pay their cover charges, and go inside," the officer also said, "[a]bsolutely." Mincher further disclosed that My Club advertised its services in other "bars." From these circumstances, a reasonable officer in the shoes of Mincher could rationally deduce not only that actual access to My Club was rather open (despite the presence of minor informalities one must satisfy) but also that the locale was a public place, as that term is commonly understood. Being able to so deduce, Mincher had probable cause to believe that appellant was committing a crime by drinking beer between 2:15 and 7:00 a.m. And, because of that, both the arrest and ensuing search were lawful.

The judgment is affirmed.


                                        Brian Quinn
                                        Chief Justice

Publish.